Oral argument not to exceed 15 minutes per side. Mr. Cedrone for the Defendant Appellant. Good morning. Good morning, sir. My name is Mark Cedrone. I represent Doreen Hendrickson. With the court clerk, I reserve the three minutes for rebuttal if that's acceptable to the court. As stated, I represent Doreen Hendrickson, who is currently serving a prison sentence, frankly, because she had the temerity to refuse to say that she believed something that she does not believe to be true. At its core, that's what this case is about. In 2002 and 2003, Ms. Hendrickson and her husband filed an income tax return in which they sought tax returns, they took the position that the earnings from which those withholdings were withheld did not constitute income and was not properly subject to the tax. In April of 2006, the government filed an injunction action against Ms. Hendrickson. They got the injunction. We affirmed it, correct? You affirmed the direct appeal of the injunction action. That is correct. My first question for you is, given that we affirmed that injunction, that's res judicata. You can't argue now that the injunction actually was unlawful. There's just no way. With all due respect, Your Honor, I believe that we can. We already held that it's lawful, so how can you have another round at that? It's really not res judicata. There's a doctrine called the collateral attack bar, is what I think the court is referring to. It's probably that and res judicata, because the thing already decided. This thing, this particular thing, this court already decided, and we usually don't go back and say, let's do it again. Within the confines of a violation of 4.013, the contempt statute that we're dealing with here, ordinarily, one cannot relitigate. The concept of the word ordinarily means something here. So, for example, if something is facially invalid, and I would give an example of that. Let's say, hypothetically, there was an order that said, you are required to assassinate Judge Kethledge. And let's assume, hypothetically, and that was affirmed. You would not have to comply with that order to not be held in contempt. But the affirmance makes it more legal, doesn't it? If you've got a higher court that says you can do that. Well, when you say more legal, it's just another stamp of permanence, for lack of a better word. But the reality of it is that if an injunction is facially invalid, then one can challenge it. But more to the point... Your Honor, the elements of 4013, or at least the statute, requires that there be a lawful order. And the elements are stated, at least by this court on several occasions, is that the order be, I think it's clear and direct. If there's ambiguity in the order, if there's ambiguity in how it is to be complied with, and there's much ambiguity in this case, and we could talk about that at any point. Or if the order on its face is invalid, and therefore unlawful, it would seem to me that the court would not be able to proceed with criminal prosecution. This issue was raised by Ms. Hendrickson in her pro se pleadings as a motion to dismiss, and then again on judgment of acquittal. But more importantly, forget, aside from whether the issue itself, the legality of the order, bars prosecution, the court committed several other errors below in relation to the legality of the order. For example, the court below did not allow Ms. Hendrickson to ever articulate her belief that the order was illegal. This would have gone directly to her good faith defense under 4013, which requires proof of willfulness and so forth and so on. In fact, and this ties to another error, actually, I've watched this court over three oral arguments. It's pretty clear to me this court knows the procedural history of all the cases. I'm assuming the court understands the procedural history of this case. It's a little bit complicated because we have to Ms. Hendrickson was tried twice. In her first case, she was allowed to give, she gave testimony concerning her belief of the lawfulness of the order. And then that belief was then, and that testimony was then argued before the jury during her sermations, and she was a hung jury in that first case. One juror wouldn't agree, right? I'm sorry? Was it one juror who wouldn't agree? I'm not really certain, Your Honor, of whether it was one juror who wouldn't agree or whatever. And then on top of that, we have this situation of this whole thing being complicated by we're not sure what the jury was required to agree to. I mean, there's a whole issue, and in my view, probably the most important issue in this case and the most pressing issue is the issue of the lack of unanimity instruction, which, you know, I'm prepared to address at any point. But getting back to this issue of the lawfulness of the order and Ms. Hendrickson's good faith belief in the unlawfulness of the order, in the second trial, her standby counsel unilaterally decided to not ask a series of questions that were permitted in the first trial. And then when she tried to argue those matters... She didn't, as I read the record, or I guess it's even in your brief, that your client did not, counsel's not asking the questions she wants to ask, but she stays mute. She doesn't pipe up and say, could I tell the court I want to say this? She didn't, and not until after the fact do we realize this. She doesn't stay mute. She tells her counsel, she says, I'm troubled, her standby counsel, I'm troubled... She doesn't let the court know. Am I right about that? Well, she does not go to the court and say, Your Honor, I... Anything. At that point in time, she says nothing, and that ties into the government's theory that somehow this was waived. The reality of it is when you look at the declarations of both Ms. Hendrickson and Mr. Wise, she did have a concern, and Mr. Wise basically says, don't worry about it, bring it up during your closing, you'll be able to do that. So, I mean, her standby counsel has some obligation to give her some assistance in this situation where he's the one who unilaterally makes a decision. She's counsel because she's representing herself. She is, and because of court edict, he is interjected into the questioning process and then does not follow through with her directions. And she's left without... You know, she assumes the lawyer... I mean, she just assumes the lawyer... Does harmlessness come into this? No, I do not believe... I don't... In this particular issue, I do not see how harmlessness can come into this issue at all. When you see that the omitted questions, when asked in the first case, resulted in a hung jury, and then she's defending the case essentially on a good faith claim, which would in essence allow her to discuss her understanding of the law, whether right or wrong, but she would be allowed to do it, and yet there's no testimony about her understanding of the law, and then she's not allowed to make an argument concerning her understanding. I thought this might have been raised as a violation of her Sixth Amendment right to self-representation. It was. Okay, but... So there's no harmless error analysis required, actually. Okay. It's structural. If there is interference under McCaskill... Okay, help me understand how that is a violation of her right to self-represent. As a pro se defendant, she has the absolute right to direct the conduct of her defense. Did she try to ask herself questions? It wasn't permitted. She asked the court to do it, and the court wouldn't allow it? No. Early in the process, the court said, if you are to testify, you have to go through this question and answer process. You give your lawyer the question. And that is a procedure that has been blessed over and over again when pro se defendants seek to represent themselves. So now we're stuck, for lack of a better word, with this. You have to have your lawyer ask the questions. Sometimes you don't even have a standby counsel, surely, counsel? Correct. A lawyer can ask himself questions and answer questions. That wasn't requested of the court. Sometimes there is not standby counsel, and they have to do it that way. Sometimes courts allow the defendant to testify in a narrative. In this particular instance, the district court insisted that the defendant use this question and answer to be provided for by or asked by her attorney. And he did not dispatch his obligations to do so. And she's now stuck with this argument that the government is saying, well, you know, she waived any complaint about this. If I may, I'd like to ask, does the court have any more questions on this particular issue? Well, I mean, just the district court found she didn't object. And she did not object. And, you know, she's held to the court rules, so she waived it, right? No, I don't believe it. By acquiescing. I do not believe she waived it by acquiescing. No, she, you know, the fact that she did not object does not necessarily mean that she, the fact that she didn't utter the words, I do not object, doesn't mean she didn't have a problem with it. She articulated the problem to her. It doesn't help in a courtroom if you have a problem. Your Honor, with all due respect, she articulates to her standby counsel that you didn't ask me all of these questions. And he then says, don't worry about it. You'll be able to do this. How is a pro se litigant, even though she's, you know, not to be given any special breaks, but how is a pro se litigant at that point supposed to say, wait, I have a basis to object? This officer of the court who is appointed by the judge to represent me has said, don't worry about it. It's okay. Well, the counsel suggested she bring it up in closing argument. Did she try to do that? Yes, she did. And she was not permitted to. I didn't see that in the record of your briefs, but maybe it's in there. I can give the record site. It's cited in our briefs. The record site is cited in our brief. If the court will indulge me, maybe I can give it to you. But it's absolutely cited. We'll find it. Don't worry, because you're running out of time. As I stated earlier, to me the biggest problem in this case is the unit admitting instruction or the absence of unit admitting instruction. In this court's very recent pronouncement on the concept, it's the Miller case, although generally when there are multiple means to commit a crime, it seems that in certain instances unanimity per each mean is required. When the means are not sufficiently related, I think that the term of art is marginal. There's only a marginal relationship or connection to them. Right. The injunction in this case, the orders in this case, there really are two orders. At times people talk about it as one injunction. There's two separate orders. One requires action and one requires non-action. All this is part of the same scheme or whatever you want to call it. It's all part of one course of conduct. Well, Your Honor, that implies that this is a tax case. She is convicted of contempt. And one of the problems that I've seen throughout this whole process is that the whole thing seems to get confused with the discussion about tax matters versus criminal process and so forth. It's one injunction that we're talking about, right? It's one injunction that has two separate and distinct orders. It's one piece of paper that has two very distinct and unrelated orders. She never denied that she did those things. She just claimed that they weren't legal, right? That was her defense. But, Your Honor, she actually attempted on two occasions to file amended returns. And on both instances, those returns were determined by the government to not be acceptable or qualified. But she did file amended returns in June of 2010 and then again in January of 2011. Didn't she maintain in those two, in those, again in those, her view that the tax code was unconstitutional? Would she maintain? No, it has nothing to do with unconstitutional. The position, the substantive position relates to whether statutorily. This wasn't her income. It's what constitutes whether certain forms of earnings are subject to the tax. It has nothing to do with, ultimately it has to do with constitutional issues. But, again, keep in mind this is not a criminal tax case. This is a contempt case. And that's the important. We understand. And I think it will be helpful to hear from your opposing counsel. And you've reserved some time, I think. Thank you. Thank you. May it please the Court. Mark Detterman for the Department of Justice. I guess I'll just touch on a couple of things that were mentioned. First of all, the defendant testified for nearly a day regarding her good faith beliefs, her alleged good faith beliefs in the tax system. And so the few questions here, the judge found that they were cumulative of other questions that had been asked and that he found that it wouldn't change the verdict. And even if this was structural, well, the Supreme Court has said that in order to interfere with someone's right to represent themselves, it has to be a significant interference with a tactical or strategic decision. And the fact that the judge found that these questions were just cumulative suggests that it wasn't a significant interference with a tactical or strategic decision in this case. And going back to the first trial, the hung jury, Your Honor, Judge Seiler was right, that it was one holdout juror, that there was 11 to convict. That's my understanding. I believe that's on the record. I thought I'd seen something here. I believe that's on the record. I'll also point out that the procedure where she was asked questions by standby counsel was something she didn't object to. And she had an opportunity to voice to the court that she believed that questions weren't asked. There was a sidebar after her testimony where she was at present, it wasn't brought up. So all those things, I think, go to show that the judge's decision that she acquiesced in this decision was not clearly erroneous. And that's a factual decision, and the standard is clearly erroneous. Defense counsel tries to argue that this is two different injunctions, but it's really just telling her to follow the law, which says that you have to file accurate tax returns. So it was file accurate tax returns and don't file frivolous. The flip side of that, don't file frivolous arguments. So I don't see that this is too unrelated, that any type of unanimity instruction. This court is pretty clear that different means of committing the same crime do not require specific unanimity instructions. These are not different elements. The element is disobeying the court. That's in the statute. These are means alleged in the indictment in this case, in the contempt indictment. Did she try to argue before the jury this theory that her counsel wouldn't ask her about, and did the court stop her from doing that? No, she did argue to the jury in clothing that she had a good faith belief that you didn't have to pay taxes. I'm not sure if she went into all the cases that she wanted to do. I mean, I think these questions related to specific Supreme Court cases she wanted to discuss. I'm not sure how those are relevant if she's saying it's not a constitutional issue, that taxes aren't unconstitutional, why she needs to talk about Supreme Court cases. Did the court cut her off and say she couldn't mention whatever cases she was wanting to do? No, I don't believe that the court cut her off during closing that I recall. And she had a fairly long closing argument and testified again for nearly a day on her own. So the jury got a full view of what her views were and whether they believed her that she thought the injunction was invalid or that she was complying with it in good faith. Does the court have any other questions on any other issues? Apparently not, counsel. Thank you for your argument. Okay, thank you for coming out. Just to answer Judge Seiler's question, during closing, Ms. Hendrickson states, I mentioned a few minutes ago the long line of rulings by the United States Supreme Court about attempts by the government officials to take control of a man or a woman. As it happens, the most recent of these was issued by a court just a few weeks ago after I was indicted in this case. Mr. McClellan, Government Counsel, objection, Your Honor. The court, what's the objection? The citation of the court's case, an argument that aren't from the judge, in this case his instructions. The court, and they are not in evidence, sustained. And that's at record entry docket number 108, page ID 1755. And that she was not permitted to make any further reference to. Well, ordinarily in a case, a criminal case, that neither side is allowed to cite to the Supreme Court opinions and what the law is, except for the judge to tell the jury what the law is, right? In a case where there is a good faith defense, a criminal defendant's good faith understanding of what the law is, is certainly relevant and probative. And in this case, because of the error by counsel, which I submit is a structural error, not subject to any kind of cumulativeness or harmless review analysis, she was deprived of evidence from which she could argue good faith. Well, I mean, it would seem like, looking at this record, the one thing probably everybody agreed on is that she sincerely believes he's cracking the code theories. I mean, do you really think the jury didn't get that, you know, point through the trial? That she's just faking it and she's actually just trying to save ten grand or something? I don't know, Your Honor. And I would agree that no one seems to have argued that she sincerely believed it. But at the end of the day, the jury still has to consider her mental state. And the way the jury was instructed, for example, to not consider the lawfulness of the statute, negated her good faith belief. And that's one of the points that we've made, you know, in arguing this case. Just very briefly, again, this unanimity instruction or the lack of a unanimity instruction really does bother me primarily. Counsel here, you know, talks about the flip side of different coins. We're talking about two completely different concepts, one prohibiting action and one requiring action. Stop filing returns according to cracking the code and file a return that isn't by cracking the code. Is that fair? That's fair, yes. But really, it's exactly what opposing counsel just said. But there are different actions. One is proactive. Those are marginally related to each other? I don't believe so. They're much like the Duncan case, Your Honor, where there were different ways of committing, you know, the filing of a false return, which hasn't been repudiated by the Supreme Court's decision. In fact, this Court cites it in Miller and more recent cases. I see my time is up. Any further questions? No, sir. Thank you for your argument. We will issue an opinion.